UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA GRIFFIN,

                Plaintiff,         Civil Action No. 15-13809
                                             Honorable Denise Page Hood
                                             Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]**

Plaintiff Angela Griffin ("Griffin") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Griffin is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Griffin's Motion for Summary Judgment [14] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II. REPORT**

    **A. Procedural History**

On October 2, 2013, Griffin filed applications for DIB and SSI,[1] alleging a disability onset date of November 15, 2012.[2] (Tr. 307-27). These applications were denied initially on January 23, 2014. (Tr. 232-39). Griffin filed a timely request for an administrative hearing, which was held on March 12, 2015, before ALJ Jerome Blum. (Tr. 63-90). Griffin, who was represented by attorney Adam Banton, testified at the hearing, as did vocational expert James Fuller. (*Id.*). On April 24, 2015, the ALJ issued a written decision finding that Griffin is not disabled. (Tr. 13-24). On September 11, 2015, the Appeals Council denied review. (Tr. 1-4). Griffin timely filed for judicial review of the final decision on October 28, 2015. (Doc. #1).

    **B. Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

---

[1] Griffin previously filed applications for DIB and SSI alleging disability beginning on June 24, 2011. (Tr. 278-93). On November 14, 2012, an ALJ issued a written decision denying that application (Tr. 118-27), and on September 20, 2013, the Appeals Council denied Griffin's request for review of that decision (Tr. 132-37). ALJ Blum, who adjudicated the claim at issue herein, determined that Griffin submitted "new and material evidence" supporting a finding that she has additional severe impairments, and, thus, he was not bound by the findings of the previous ALJ as of the day following his November 14, 2012 decision. (Tr. 13-14).

[2] At the hearing, Griffin amended her alleged onset date to May 10, 2013. (Tr. 66).

>Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
>Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.  Background**

*1.  Griffin's Reports and Testimony*

At the time of the administrative hearing, Griffin was 44 years old, and at 5'6" tall, weighed 192 pounds.  (Tr. 78, 382).  She lived in a house with her daughter and a friend.  (Tr. 77, 394).  She completed high school but had no further education.  (Tr. 388).  Previously, she worked in mail processing and as a security guard.  (*Id.*).  She was in a car accident in 2007 but subsequently returned to work as a security guard.  (Tr. 72).  In June of 2011, Griffin was fired from this job, allegedly because she "kept having asthma attacks."  (Tr. 72-74, 387).

Griffin alleges disability as a result of asthma; back, leg, and knee pain; abdominal pain; and headaches. (Tr. 68, 70, 394). She testified that her left leg hurts worse than her right, and she experiences achiness and swelling in her feet. (Tr. 68). She takes Norco and Naproxen for pain, and these medications provide her with some relief. (Tr. 69-70). She also has "very bad pain in the pelvic area" and had an ovarian cyst removed in 2013. (Tr. 75-76). Griffin also testified that she has a tumor on her left kidney, which she claims was resolved "by diet" (and, by her own admission, was not causing her any problems at the time of the hearing). (Tr. 78-79). Griffin also has syncopal episodes (approximately two or three times a month), when her headache becomes "unbearable," she gets dizzy and lightheaded, and at times suffers blackouts. (Tr. 81). Additionally, she has been diagnosed with bipolar disorder and testified that she recently has been very depressed. (Tr. 80).

Griffin testified that she can sit for about 20-30 minutes at a time, stand for 20 minutes at a time, walk about 100 feet at a time, and lift 10 pounds.[3] (Tr. 82-83). She testified that she has used a cane occasionally since 2011 (Tr. 83); however, there is no medical evidence in the record indicating that this assistive device was prescribed by a physician. She is able to care for her daughter, including cooking for her, washing her clothes, bathing her, helping her with homework, and getting her ready for school. (Tr. 395). She is able to care for her pets, prepare simple meals, clean her house, do laundry, drive, shop for groceries, pay bills, and handle a checkbook. (Tr. 395-97). She enjoys reading, watching television, and playing with her daughter, and she socializes – either in person or on the telephone – every day. (Tr. 398). She can pay attention as long as necessary, finish what she starts, follow written instructions "very well," and get along well with authority figures. (Tr. 399-400). Griffin testified that she takes

---

[3] In her November 2013 function report, however, Griffin indicated that she can lift 30 pounds and walk ½ mile. (Tr. 399).

4

three or four naps per day, for twenty minutes to an hour at a time. (Tr. 82). She also elevates her legs for five or six hours per day in an effort to reduce her leg pain and swelling. (Tr. 82).

2.  *Vocational Expert's Testimony*

James Fuller testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 84-89). Rather than posing a hypothetical question, as is typical in these cases, the ALJ simply asked the VE to list unskilled, sedentary jobs "of the bench variety," which would allow for a sit/stand option. (Tr. 86). In response, the VE indicated that the job of inspector (3,000 jobs in the state of Michigan) would meet these criteria. (Tr. 86-87).

**D.    The ALJ's Findings**

At Step One of the five-step sequential analysis, the ALJ found that Griffin has not engaged in substantial gainful activity since May 10, 2013 (the amended alleged onset date). (Tr. 16). At Step Two, the ALJ found that Griffin has the severe impairments of venous insufficiency, bilateral quadriceps tendonitis, mild to moderate osteoarthritis of the bilateral knees, nerve root irritation at L5-S1 on the right, abdominal pain with renal mass and right ovarian cystectomy, and bipolar disorder. (*Id.*). At Step Three, he found that Griffin's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17).

The ALJ then found that Griffin retains the residual functional capacity ("RFC") to perform unskilled, sedentary work, except that she must be allowed to alternate between sitting and standing as needed throughout the day. (Tr. 18-19).

At Step Four, the ALJ determined that Griffin is unable to perform her past relevant work. (Tr. 22). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Griffin is capable of performing a significant number of jobs that exist in the national economy.

(Tr. 23). As a result, the ALJ found that Griffin is not disabled under the Act. (Tr. 24).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F. Analysis

#### 1. *Any Error in Analyzing Griffin's Headaches Was Harmless*

Griffin first argues that the ALJ erred in finding, at Step Two of the sequential evaluation process, that her headaches are not a severe impairment. (Doc. #14 at 13-14). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5)

7

responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* The Sixth Circuit has "characterized step two of the disability determination process as a *de minimis* hurdle." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (internal quotations omitted). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

As the ALJ noted, Griffin was hospitalized for observation in October 2013, after presenting with complaints of dizziness, lightheadedness, and syncopal episodes with migraine headaches. (Tr. 706-39). She was evaluated by neurology, diagnosed with a complicated migraine, started on verapamil, and discharged home in stable condition. (Tr. 706). At a subsequent follow-up visit to the neurology clinic on November 14, 2013, Griffin reported that she had not had any syncopal events since being discharged from the hospital. (Tr. 952). She continued to wake up with a "slight headache" approximately five times a week, which lasted between 20-30 minutes. (*Id.*). Her medication was changed from verapamil to Topamax, and she was advised to follow up in a few months. (Tr. 954-55). At her next visit to the neurology clinic, on March 25, 2014, Griffin indicated that she noticed improvement in her headaches after taking Topamax and said that she had not had "any of her very severe headaches." (Tr. 948). Her medication was continued, and she was advised to follow up in six months. (Tr. 950). On September 18, 2014, Griffin returned to the neurology clinic, reporting that she had stopped taking Topamax in April because it was causing side effects (primarily left arm numbness and pain). (Tr. 944). At that time, she was having daily headaches and was experiencing syncopal episodes. (Tr. 945). She was started on gabapentin, and an MRI of the brain and MRA of the

8

head were ordered. (Tr. 946). These tests, performed in October 2014, both revealed findings within normal limits. (Tr. 927-30). When Griffin returned to the neurology clinic on November 21, 2014, she reported that her headaches were better, and it was noted that she was "doing well on gabapentin." (Tr. 940, 942).

Even assuming, for purposes of resolving the instant cross-motions for summary judgment, that the ALJ erred in finding that Griffin's headaches were not severe at Step Two, no different outcome would result because any such error is harmless. As Griffin acknowledges, "an ALJ's failure to name one of the claimant's impairments as severe at step two does not constitute reversible error so long as the ALJ considers all of the claimant's impairments, severe and non-severe, during later steps of the sequential evaluation analysis." (Doc. #14 at 13 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Indeed, the law is clear that, in determining an individual's RFC, "Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. §404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity … we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."); 20 C.F.R. §404.1545(a)(2) ("*If you have more than one impairment.* We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§404.1520(c),

404.1521, and 404.1523, when we assess your residual functional capacity.") (emphasis in original). Similarly, Social Security Ruling ("SSR") 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *5 (July 2, 1996). In summary, then, once the ALJ determined that Griffin suffers from several severe impairments, he was required to consider those impairments in combination with all of Griffin's other impairments – both severe and non-severe – in assessing her RFC. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190-91 (6th Cir. 2009).

According to Griffin, the ALJ failed to do so. Specifically, Griffin asserts that the ALJ "neglected to consider [her headaches] at the later steps of the sequential evaluation process," that he "did not make any mention of [her] migraine headaches and associated limitations," and that he failed to "reference the treatment records from Harper Neurology – [her] specialized treatment source for her migraines for over a year." (Doc. #14 at 14 (citing Tr. 17-22, 939-56)). A review of the ALJ's decision, however, makes clear that Griffin is incorrect. The ALJ explicitly addressed the functional effects of Griffin's syncopal episodes and headaches at Step Two,[4] finding that the evidence does not "support a conclusion that these episodes more than

---

[4] To the extent Griffin suggests that the ALJ was required to repeat his Step Two analysis later in the sequential evaluation, such an argument lacks merit. *See, e.g., Buchanon v. Comm'r of Soc. Sec.*, 2015 WL 927831, at *6 (E.D. Mich. Mar. 4, 2015) ("It would be a needless formality to

10

minimally affect [her] ability to perform basic work activities." (Tr. 16-17). Moreover, contrary to Griffin's assertion, the ALJ <u>did</u> acknowledge her treatment for syncopal episodes and migraines at the Harper Neurology Clinic; however, he supportably found that these conditions did not cause any appreciable physical or mental deficits, improved with medication, and were accompanied by consistently normal neurologic examination findings. (Tr. 17 (citing Exhibit B20F [Tr. 939-56])). Griffin points to no medical opinions or objective findings substantiating her claim that she experiences debilitating headaches on a daily or even regular basis.[5]

Thus, where the ALJ properly found that Griffin's allegations were less than fully credible – a finding that Griffin does not challenge – the ALJ was not required to impose any related restrictions in his RFC assessment. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."). As a result, the ALJ's explicit decision not to incorporate any limitations into Griffin's RFC to account for her headaches is supported by substantial evidence.

### 2. The ALJ's RFC Assessment Adequately Reflects Griffin's Moderate Limitations in Concentration, Persistence, or Pace

With regard to concentration, persistence or pace ("CPP"), the ALJ found that Griffin has moderate difficulties. (Tr. 18). In turn, in the RFC he ultimately adopted, the ALJ limited

---

have the ALJ repeat substantially similar factual analyses in different parts of the decision ….") (internal quotations omitted); *see also Rathfon v. Comm'r of Soc. Sec.*, 2016 WL 1604599, at *7 (W.D. Mich. Apr. 22, 2016).

[5] Indeed, to some extent, Griffin's own testimony and statements provide support for the ALJ's conclusion that her headaches do not significantly limit her ability to work. Specifically, Griffin testified that she had been experiencing severe headaches continuously since her 2007 auto accident (Tr. 71-72); nevertheless, she was able to continue working at a semi-skilled, light job for a few years after that accident (Tr. 72-73, 84-85). Indeed, she testified that she only stopped working because her employer fired her after she had an asthma attack. (Tr. 72).

Griffin to "the performance of unskilled work." (Tr. 18-19). Griffin argues that this limitation was inadequate because it "failed to include limitations that were specific to the CPP limitations he had assessed." (Doc. #14 at 15). The Court disagrees.

Where an ALJ finds that a claimant has CPP deficiencies, failure to account for such deficiencies in the hypothetical question may constitute reversible error. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010). While an ALJ is not required to include any particular phrase or talismanic language in an RFC to properly account for a claimant's CPP limitations, the hypothetical limitations chosen by the ALJ must be supported by substantial evidence. *See Barnes v. Comm'r of Soc. Sec.*, 2013 WL 6328835, at *14 (E.D. Mich. Dec. 5, 2013) (citing *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001)). However, as one of the cases relied on by Griffin makes clear, "[T]here is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011); *see also Schalk v. Comm'r of Soc. Sec.*, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011). And, recently, the Sixth Circuit confirmed that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in [CPP]." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).[6]

---

[6] In her reply brief, Griffin asserts that, "Courts have held that an RFC which merely limits claimants to 'unskilled work,' 'simple tasks,' or 'routine tasks' is insufficient to account for CPP deficiencies." (Doc. #18 at 3 (citing *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) and *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007)). While it is true that there is some case law supporting Griffin's arguments, other courts in this jurisdiction have found just the opposite – that limitations similar to those imposed by the ALJ here were sufficient to account for the claimant's particular CPP deficiencies. *See,*

In this case, there is no credible evidence supporting mental limitations beyond unskilled work, despite the ALJ's assessment of "moderate" limitations in CPP at Steps Two and Three of the sequential evaluation. As the ALJ noted, the record reflects that Griffin has appeared, on a semi-regular basis, for appointments with a psychiatrist and therapist since May 2013; however, the treatment records do not reflect any significant findings, other than a depressed mood and constricted affect. (Tr. 21 (citing Tr. 740-64, 975-97)). Moreover, as the Commissioner points out, the ALJ's RFC assessment is consistent with the findings of state agency examiner James Tripp, who opined that Griffin was "able to do simple, unskilled work with sustainability and persistence." (Tr. 161). Griffin has not established that additional, more specific mental limitations are required in order to account for her moderate limitation in CPP.

Rather, Griffin argues that where, as here, the ALJ did not "rely upon a physician or mental health expert's specific opinion" that she had moderate limitations in CPP, but instead "reache[d] this conclusion upon his own analysis," he was required to "explain how he reconciled his own findings with his … RFC assessment." (Doc. #14 at 16; Doc. #18 at 4). *Mortzfield v. Comm'r of Soc. Sec.*, 2014 WL 1304991, at *1 (E.D. Mich. Mar. 31, 2014), a case cited by the Commissioner, is directly on point and supports the conclusion that the ALJ here did not commit reversible error. In *Mortzfield*, the court considered an argument identical to Griffin's, and observed:

> … the cases generally fall into two categories – those where a medical expert has found a moderate limitation in CPP, and those where the ALJ

---

*e.g., Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009) (holding that the moderate CPP limitations of a claimant who retained the ability to perform simple tasks on a sustained basis were accurately described by a hypothetical limiting the claimant to "unskilled work"); *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (finding that, by limiting the claimant to "simple and rote type job tasks" in his hypothetical, the ALJ sufficiently accounted for his finding that claimant "often" experiences issues with CPP).

>specifically found such a limitation, whether or not there was such a finding by a medical expert. In the latter class of cases, in which this case falls, the ALJ must incorporate the CPP limitation, *in some way or form*, into the hypothetical questions asked of the VE.

*Id.* at *1 (quoting *Boley v. Astrue*, 2012 WL 680393, at *16 (E.D. Mich. Feb. 10, 2012) (emphasis added by *Mortzfield* court)). Applying this standard, it is clear that the ALJ did, in fact, account for Griffin's moderate CPP limitations "in some way or form" – namely, by restricting her to unskilled work, which "by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment." *Latarte*, 2009 WL 1044836, at *3 (citing 20 C.F.R. §404.1568(a)). Indeed, the ALJ expressly stated that his RFC assessment reflected his finding that Griffin had moderate difficulties in maintaining CPP. (Tr. 18) (noting that the RFC "reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental functional analysis.").

In sum, there is no bright-line rule providing that moderate CPP limitations are incompatible with a restriction to merely unskilled work, and Griffin has not pointed to any record evidence supporting a conclusion that greater limitations were necessary. Moreover, as discussed above, the ALJ adequately explained how he accounted for Griffin's CPP limitations. *Mortzfield*, 2014 WL 1304991, at *1. As such, Griffin's arguments are unpersuasive. *See Padlo v. Comm'r of Soc. Sec.*, 2016 WL 4536425, at *3 (E.D. Mich. Aug. 31, 2016) ("Plaintiff's argument rests on an assertion that the ALJ's independent findings about his CPP limitations must be expounded on in the RFC and hypothetical. However, an ALJ is not required to include certain language when describing a limitation ….").

### 3. The ALJ's RFC Finding is Supported by Substantial Evidence

Griffin also broadly argues that the ALJ's RFC assessment is not supported by substantial evidence. (Doc. #14 at 17-18). In reaching his conclusion that Griffin can perform a limited

14

range of sedentary, unskilled work, the ALJ cited numerous facts contained in the record, all of which support his conclusion that Griffin's limitations were not as disabling as she alleged. For example, the ALJ noted that despite Griffin's allegations of disabling low back pain, there is little objective medical evidence establishing the severity of this condition. (Tr. 19-20). As the ALJ observed, a May 2013 EMG revealed evidence of nerve root irritation at L5-S1 on the left (Tr. 19 (citing Tr. 680)); subsequently, Griffin received a series of bilateral SI joint injections between June and September 2013 (Tr. 676-79). As the ALJ further noted, however, the record reflects no additional treatment for Griffin's back pain. (Tr. 19-20). And, during a January 2014 consultative examination with Bina Shaw, M.D., Griffin displayed full range of motion of the cervical, thoracic, and lumbar spine; no SI joint tenderness; no muscle spasm; no midline spine tenderness; and negative straight-leg raising. (Tr. 876-78). The ALJ afforded "some weight" to Dr. Shaw's opinion that Griffin can meet the exertional requirements of light work with no bending or squatting (Tr. 22), but assessed an RFC even more favorable to Griffin, reducing her exertional capacity to sedentary and including a sit-stand option. (Tr. 18-22).

Similarly, the ALJ considered Griffin's bilateral knee problems, finding that they would not preclude all work. (Tr. 20). The ALJ noted that, at an August 2013 appointment with an orthopedist, Griffin reported benefiting "tremendously" from physical therapy and experiencing 100% pain relief after injections in both knees in April 2013. (Tr. 20 (citing Tr. 806-07)). The ALJ further noted that Griffin returned to the orthopedist in November 2013, at which time she displayed mild tenderness to palpation and patellofemoral crepitus and received an injection in her right knee. (*Id.* (citing 804-05)). However, x-rays taken that day were within normal limits, and there is no evidence of any additional treatment for Griffin's knees. (*Id.*). Moreover, as the ALJ noted, Griffin displayed full range of motion of the hips, knees, and ankles, as well as

15

normal reflexes and motor strength in the lower extremities at the January 2014 consultative examination.  (*Id.* (citing Tr. 878)).

The ALJ also considered Griffin's history of venous insufficiency, again concluding that the objective medical evidence did not indicate that this condition would prevent all work.  (Tr. 20-21).  As the ALJ noted, Griffin underwent successful laser ablation of the greater saphenous veins in May and August 2012; she did not return to a cardiologist for further treatment of this condition until March 2014.  (Tr. 20, 586).  Griffin's treating cardiologist, Tamam Mohamad, performed endovascular radiofrequency ablation of the left and right small saphenous veins in June 2014 and August 2014, respectively.  (Tr. 896-900).  And, as the ALJ noted, lower extremity venous studies performed in September and November 2014 demonstrated that both of these procedures were successful.  (Tr. 20 (citing Tr. 920-21)).

Finally, the ALJ considered Griffin's complaints of abdominal and pelvic problems, noting that although she alleged at the hearing that she experiences urinary leakage, pain, and internal bleeding from her kidney, none of these allegations are supported by objective medical evidence.  (Tr. 21).  As the ALJ noted, Griffin did visit the emergency room in September 2013 with complaints of abdominal pain; however, a CT scan of her abdomen revealed only a small left renal mass (most likely a hyperdense cyst), a right large para-ovarian cyst, and two small left ovarian cysts.  (*Id.* (citing Tr. 671-73, 694-95)).  And, although Griffin ultimately underwent a right ovarian cystectomy in December 2013 (Tr. 872-75), the ALJ correctly noted that there is no evidence that she has received any treatment for these conditions since this procedure.  Thus, the ALJ concluded that Griffin's allegations regarding the severity of her abdominal/pelvic problems were not entirely credible and such symptoms would not prevent her from performing sedentary work.  (Tr. 21).

In the face of the ALJ's extensive RFC analysis, Griffin argues only that the ALJ did not comply with SSR 96-8p, which she claims requires a "function-by-function assessment." (Doc. #14 at 17). The Sixth Circuit has explicitly rejected this argument, however, stating as follows: "[T]he Third Circuit stated, 'Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing …. [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table) (3d Cir. Dec. 19, 2000)). Here, then, where the ALJ provided a detailed, thorough and fair discussion of the evidence, and considered the impact of that evidence on Griffin's ability to perform work-related activities, the Court finds the RFC analysis sufficient. *See Delgado*, 30 F. App'x at 547-48.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Griffin's Motion for Summary Judgment [14] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: September 15, 2016  s/David R. Grand  
Ann Arbor, Michigan  DAVID R. GRAND  
 United States Magistrate Judge

17

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2016.

                                          s/Eddrey O. Butts
                                          EDDREY O. BUTTS
                                          Case Manager